IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 25, 2005

## DAVID GENE SKIPPER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Putnam County**
**No. 00-0302     Leon C. Burns, Jr., Judge**

-------------------

**No. M2004-01137-CCA-R3-PC - Filed March 15, 2005**

-------------------

The Petitioner, David Gene Skipper, pled guilty to two counts of rape of a child and one count of attempted aggravated sexual battery. The trial court sentenced him to an effective sentence of thirty-one years in prison. The Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed after a hearing. The Petitioner now appeals, contending that: (1) he was denied the effective assistance of counsel; (2) his guilty pleas were not knowingly and voluntarily entered; and (3) there was not a sufficient factual basis to support the guilty pleas. Finding no error in the judgment of the post-conviction court, we affirm the dismissal of the Petitioner's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**


ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

R. Steven Randolph, Cookeville, Tennessee, for the Appellant, David Gene Skipper.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William E. Gibson, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

**I. Facts**

This appeal arises from the dismissal of the Petitioner's petition for post-conviction relief. The Petitioner was indicted for ten counts of rape of a child. On May 22, 2001, the Petitioner pled

guilty to one count of rape of a child, and, on July 26, 2001, the Petitioner pled guilty to a second count of rape of a child and one count of attempted aggravated sexual battery. In exchange for entering his pleas, he received two concurrent twenty-five year sentences for each of the two counts of child rape and six years for attempted aggravated sexual battery, to be served consecutively to the twenty-five year sentences.

## A. Guilty Pleas

At the plea hearing on May 22, 2001, the following evidence was presented:[1] David Andrews, an investigator with the Putnam County Sheriff's Department, testified that, on January 12, 2000, he investigated the alleged rape of a ten year old girl, V.G.[2] Officer Andrews testified that V.G. lived in the Petitioner's trailer with her brother and her mother, Rebecca Chastain, who was also the Petitioner's co-defendant. The officer said that Betsy Dunn, from the Department of Children's Services ("DCS"), interviewed V.G., and V.G. told Dunn that she and the Petitioner engaged in sexual intercourse on January 8, 2000. The officer testified that, on January 12, 2000, he interviewed the Petitioner, and the Petitioner admitted having sexual intercourse with V.G. Officer Andrews said that he collected a footrest from the Petitioner's couch, a piece of carpet from the floor in front of the couch, and a pair of V.G.'s panties, and the officer submitted these items to the Tennessee Bureau of Investigation ("TBI") crime lab for analysis. The officer testified that he also submitted a blood sample from the Petitioner for comparison to semen found on the carpet and footrest, and the TBI reported that the DNA from the seminal evidence matched the Petitioner's DNA. Officer Andrews recalled that, on January 12, 2000, he also interviewed Chastain. He said that Chastain admitted that, at least as early as November of 1999, she and the Petitioner discussed teaching V.G. "the pleasures of sex."

Following this testimony, the Petitioner entered a guilty plea to one count of rape of a child. Before the trial court accepted the Petitioner's plea, it advised the Petitioner that he had a right against self-incrimination. The Petitioner stated that he understood and was voluntarily waiving that right. The trial court explained the charges against the Petitioner, and explained that the Petitioner had the right to a jury trial, and the right to call and cross-examine witnesses. The court explained that the Petitioner had the right to testify on his own behalf, that no one could force or prevent the Petitioner from doing so, and that the jury could not consider the Petitioner's not testifying as an inference of guilt. The Petitioner said that he understood all of these rights. The court explained that the admissibility of any statements made by the Petitioner could be challenged, and the Petitioner affirmed that he understood. The trial court explained that the Petitioner was waiving the right to appeal his conviction and that the Petitioner would be giving up certain citizenship rights and civil liberties. The trial court explained that the Petitioner's conviction would be used to enhance any

---

[1]Two volumes of the guilty plea hearings transcript were submitted in the record on appeal. It appears, however, that the two volumes are identical and cover the same proceedings. The references herein are to volume II, the transcript volume cited by both parties in their briefs to this Court.

[2]It is the policy of this court to refer to victims of sexual assault by their initials only, in order to protect their privacy.

2

future criminal sentences, and the Petitioner would be required to register as a sex offender for the remainder of his life. The Petitioner affirmed that he understood all of these issues. The Petitioner informed the court that he had a ninth grade education, and was not under the influence of anything that would affect his understanding of the proceedings. The Petitioner stated that he did not disagree with Andrews' account of the crime. He stated that he gave Officer Andrews his statement voluntarily and without coercion. The Petitioner testified that he was represented by Marshall Judd ("Counsel"). He said that he met with Counsel several times and Counsel discussed the aspects of his case, his rights, and his options, and he said that he was satisfied with Counsel's representation.

On July 26, 2001, the Petitioner entered guilty pleas tor one count of rape of a child and one count of attempted aggravated sexual battery. At the hearing on the guilty pleas, the trial court again questioned the Petitioner regarding his rights and Counsel's representation. Further, the trial court noted that proof in support of the guilty pleas was put forth at the prior plea hearing, and the Petitioner affirmed that he was waiving the need for formal proof at the hearing and had no dispute with the proof presented in the prior hearing. The Petitioner again said that he was satisfied with Counsel's representation, and that he was entering his guilty plea of his own free will. The Petitioner testified that he met with Counsel on many occasions and discussed all the aspects of his case and options available to him. He said that he also discussed these matters with his family and his pastor. Subsequently, the trial court accepted the Petitioner's guilty plea and sentenced him, according to the plea agreement, to two concurrent twenty-five year sentences for the child rape convictions, and six years for the attempted aggravated sexual battery conviction, to be served consecutively to the rape of a child convictions, for an effective sentence of thirty-one years.

### B. Post-Conviction

At the hearing on the Petitioner's post-conviction petition, the following evidence was presented: The Petitioner testified that Counsel informed him that the statement that he had given to Officer Andrews was very damaging evidence and would be used against the Petitioner at trial. The Petitioner testified that he informed Counsel of all of the circumstances surrounding the statement that he gave to the police. The Petitioner said that Betsy Dunn had come to his home and spoken with V.G., and, while Dunn was at his home, Officer Andrews arrived and told the Petitioner that he needed to come to the police station for questioning. The Petitioner testified that the officer did not show him a warrant for his arrest. He stated that he was afraid to argue with the officer. The Petitioner said that he was placed in the backseat of the patrol car, but he was not handcuffed at this time. The Petitioner testified that the officer took him to the police station, inventoried his personal items, and placed him in a holding cell for an hour. He said that he was placed in ankle shackles and taken to be interviewed by Officer Andrews and Betsy Dunn, but he still did not know he was under arrest. He said that he had a ninth grade education, and, although he could write well, his reading comprehension was lacking. He stated, "I didn't always read everything with full clarity . . . ." He said that he discussed these issues with Officer Andrews and Betsy Dunn at the time of the interview, and also he informed them that he was intoxicated at that time.

The Petitioner testified that he did not understand the purpose of his interview with Officer

Andrews. He said that Officer Andrews read him his Miranda rights and asked him to sign a form, but he "did [not] understand . . . [his] rights, because there w[ere] 11 different things in the Miranda rights that w[ere] different from the original reading of the Miranda rights." He testified that he asked the officer whether he was under arrest, and the officer replied that they would talk about that later. He said that he still did not know that he was under arrest or charged with a crime at this time. He recalled that he was "nervous" and "scared," and he informed Officer Andrews and, later, Counsel of this fact. The Petitioner testified that Officer Andrews told him the Miranda warnings were for the Petitioner's protection, but the Petitioner understood the officer to mean that the interview was for the Petitioner's protection. The Petitioner stated that, had he known that he was under arrest, he would have requested an attorney instead of making statements to the police. He recalled that the only document he signed was the Miranda form. He testified that Counsel never discussed the need for, or possibility of, filing a motion to suppress the Petitioner's statement. The Petitioner said that, had this statement been suppressed, he would not have pled guilty.

The Petitioner said that Counsel failed to adequately communicate with him. He said that, when he appeared in court on May 22, 2001, he expected Counsel to present "some sort of defense on [the Petitioner's] behalf," but he said that he was not appearing for trial on that date. He testified that Counsel presented him with a plea offer from the State, and told him that if he pled guilty to one count of child rape with a sentence of fifteen to twenty-five years, Counsel would "work at getting another–the other nine nolled off; and . . . then work at getting it dropped down to a Class–a lesser-included offense . . . ." The Petitioner said that he believed he was returning to court on July 26, 2001, for a sentencing hearing on the one count of child rape to which he pled guilty on May 22. He testified that he thought the purpose of the hearing was to argue and present evidence in support of a sentence below the mid-range of twenty years. The Petitioner said that, at Counsel's request, his mother and sister were present and prepared to testify in his behalf on July 26. He said that, based on the information Counsel gave him, he believed the other nine counts of the indictment would be dismissed at the July 26 hearing. He stated that, instead, he pled guilty to two additional charges. He said that he believed Counsel manipulated and misled him into pleading guilty. He testified that he believed his only options were to plead guilty or face life in prison.

The Petitioner stated that Counsel never explained the difference between consecutive and concurrent sentences, or mitigating and enhancement factors. He said that Counsel never told him that the Petitioner's sentence could be reduced to fifteen years if the trial court found sufficient mitigating factors. He testified that Counsel said he could receive a sentence of 200 years, with ten counts of child rape, at fifteen to twenty-five years each. The Petitioner said that Counsel never discussed sentence ranges. He said that, had he understood consecutive and concurrent sentencing, he would have insisted on going to trial.

The Petitioner testified that Counsel never discussed with him the possibility of lesser-included offenses. The Petitioner stated that Counsel only told him that he would attempt to get the child rape charge, to which the Petitioner pled on May 22, "knocked down" to a lesser-included offense, but Counsel never explained what this meant. He testified that Counsel never told him that, at trial, a jury could convict the Petitioner of a lesser-included offense that would have a shorter

sentence. He said that he met with Counsel five or six times, but he did not remember a preliminary hearing. The Petitioner testified that, had he known about the possibility of lesser-included offenses, he would not have pled guilty.

The Petitioner testified that, when he told the trial court that he understood the proceedings and his charges, including the possibility of lesser-included offenses, the Petitioner believed the court was referring to Rebecca Chastain's charge and guilty plea. He said that he told the trial court that he was satisfied with Counsel's representation because he did not know enough about the legal process at that time to realize that Counsel failed to adequately represent him.

On cross-examination, the Petitioner acknowledged that, at the guilty plea hearings, he was under oath and swore to testify honestly. He remembered signing the guilty plea form on May 22, 2001, and pleading guilty to one count of rape of a child. He testified that Counsel did not review the guilty plea paperwork with him. He said that he signed the form without reading it, and he blamed Counsel for this. The Petitioner admitted that he told the trial court that he understood his right against self-incrimination, his right to demand a jury trial, and his right to call and cross-examine witnesses. He testified that he told the trial court that he did not dispute the proof submitted by Officer Andrews at the guilty plea hearing. He recalled testifying that he understood that the statement he gave to Officer Andrews could be used against him, that the statement was given voluntarily, free from force or coercion, and that he was not promised anything in return for his statement. The Petitioner stated, however, that he would not have given the statement if he had known that he was under arrest, and he did not understand what "voluntary" meant, in the legal context, until he had the opportunity to research the law. He testified that he was "tricked" into signing his statement, believing that it was the Miranda rights form. The Petitioner admitted telling the trial court that Counsel reviewed his options and represented him well. He recalled testifying that Counsel met with him several times, and that Counsel did not force him into pleading guilty. The Petitioner said that, when he left the court room on July 26, 2001, he knew that he would be serving a thirty-one year sentence. He admitted that he informed the trial court that he understood that the charge of rape of a child carried a fifteen to twenty-five year sentence. He admitted telling the court that he understood that he would receive two concurrent twenty-five year sentences and a consecutive six year sentence. He recalled telling the court that he was pleading guilty to a second rape of a child count and one count of attempted aggravated sexual battery, but he said that "[Counsel] should have objected."

The Petitioner testified that, before he gave Officer Andrews a statement, the officer informed him that he had the right to remain silent and the right to an attorney. The Petitioner stated, however, that the officer did not use the word "Miranda," and the Petitioner would have better understood what was happening if the officer had said "Miranda Rights." The Petitioner admitted that he never informed the court that he did not understand the proceedings during either of the two guilty plea hearings. He said that the trial court informed him that, although unlikely, the Petitioner faced a maximum of 250 years in prison. The Petitioner stated that Counsel should have "argued" for a lesser sentence, but the Petitioner was unsure what a reasonable sentence would be. The Petitioner submitted that he believed he should have received eight to twelve years.

5

On redirect examination, the Petitioner explained that he was nervous and afraid on the days when he entered his guilty pleas. He said that he was afraid to ask questions because he felt he "would make it worse on [him]self." He testified that he placed his trust and faith in Counsel.

Counsel testified that he was appointed to represent the Petitioner, who was charged with ten counts of rape of a child. He said that he represented the Petitioner at the preliminary hearing. He testified that, following the preliminary hearing, he met with the Petitioner on several occasions. He thought that his investigator also met with the Petitioner, although he had no notes on this matter. Counsel testified that he and the Petitioner reviewed the Petitioner's statement to Officer Andrews. Counsel testified that the Petitioner received his Miranda rights before giving his statement to the police, and the Petitioner waived these rights. He said that he and the Petitioner discussed that the Petitioner had been drinking when he made his statement. Counsel said that the Petitioner told him that, when he gave the statement to Officer Andrews, he had been drinking beer, as he did frequently, and he had understood what he was saying to the officer. Counsel said that he also discussed with Rebecca Chastain's counsel filing a motion to suppress the Petitioner's statement, and Counsel determined that there were insufficient grounds to support such a motion. Counsel noted that, in the statement the Petitioner made to the police, the Petitioner stated that he had been drinking beer, but he understood what he was doing.

Counsel testified that he and the Petitioner discussed the possible sentence and range of punishment for each of the charges against the Petitioner. Counsel said that the strategy behind pleading guilty to one count of the indictment was to attempt to get the Petitioner an alternate sentence, rather than incarceration, but "that didn't happen." Counsel denied telling the Petitioner that he faced a life sentence. He said that the State offered a sentence of fifty years in exchange for the Petitioner's guilty plea, and Counsel explained to the Petitioner that this could, in effect, be a life sentence because the Petitioner could be incarcerated until he was over eighty years old. Counsel said that the defense strategy was to plead guilty to one count and then wait until after the outcome of the sentencing hearing to decide how to handle the nine remaining counts. Counsel said that he hoped that, if the Petitioner went to trial on the remaining nine counts, the sentences would run concurrently with the first sentence. Counsel explained to the Petitioner that the sentence would be between fifteen and twenty-five years, and the Petitioner might be able to mitigate his sentence based on his intoxication at the time of the offense. He said that the State returned with an offer of a second twenty-five year sentence, concurrent to the first, and a six year sentence, consecutive to the two twenty-five year sentences. Counsel said that he discussed the offer with the Petitioner, and, after the Petitioner discussed the offer with his family and minister, the Petitioner decided to accept the State's offer.

Counsel testified that, when he discussed the State's offer with the Petitioner, Counsel explained that one of the counts of child rape was reduced to attempted aggravated sexual battery. Counsel said that he did not use the word "lesser-included," but explained the concept "in layman's terms." Counsel said that he asked the Petitioner if he understood everything or had any questions. Counsel testified that he informed the Petitioner that the Petitioner had the right to a jury trial and that it was entirely the Petitioner's decision whether to plead guilty or go to trial. Counsel denied

6

that he forced the Petitioner to plead guilty. Counsel testified that the State had DNA evidence incriminating the Petitioner, and there were rumors that the State "might make a deal with [Chastain] to testify against [the Petitioner]." Counsel explained that the Petitioner's statement was "awful," very incriminating, and highly prejudicial. He said that he discussed these issues with the Petitioner, and Counsel considered these issues in the sentence negotiations.

On cross-examination, Counsel testified that he believed that he met with the Petitioner five to nine times, and the Petitioner did not request more frequent meetings. Counsel said that he and the Petitioner discussed the possibility of filing a motion to suppress the Petitioner's statement in "layman's terms." Counsel testified that he likely told the Petitioner that, "based on [his] legal opinion and experience, the odds were very, very, very slim to none that the statement would be thrown out, or that [the Petitioner] would win in a jury trial." He said that he told the Petitioner that May 22, 2001 was originally the Petitioner's trial date. Counsel produced a letter dated May 18, 2001, which set forth an offer from the State of thirty-five years at 100% for one count of rape of a child, and Counsel was certain that he discussed this offer with the Petitioner.

Counsel testified that he never informed the Petitioner that if the Petitioner pled guilty to one count the other nine would be dismissed or "nolled," but that Counsel "hoped" he could get the other nine counts dismissed. He said that the State originally offered fifty years, then lowered this offer to thirty-five years, and finally offered thirty-one years. Counsel testified that he told the Petitioner that thirty-one years, was, in his opinion, a good offer. Counsel testified that he did not use the words "enhancing" or "mitigating" with the Petitioner, but he was certain that he discussed in "layman's terms" the particular facts and circumstances that the trial court would consider when it sentenced the Petitioner. He said that he also discussed consecutive and concurrent sentences with the Petitioner, but, again, explained the concepts in "layman's terms" without relying on the words "concurrent" and "consecutive." Counsel testified that he did not mislead the Petitioner as to any aspect of the case. He said that the Petitioner fully understood all aspects of his case and the possible sentence he could receive, and the Petitioner just wanted "the best possible deal."

Following this evidence, the post-conviction court dismissed the Petitioner's petition for post-conviction relief. The post-conviction court found that Counsel decided against filing a motion to suppress the Petitioner's statement after reviewing all of the possible grounds to support the motion to suppress. The court explained:

[T]he statement that we're talking about is a statement that was given at the justice center, or whatever, after [the Petitioner] had been taken into custody. There's little doubt that he was in custody, and little doubt at that point that he was interrogated. But he had been given Miranda warnings, and he admits to having been advised of his rights, but they didn't call it "Miranda." And it's not necessary that the word "Miranda" be used . . . .

The fact that [the Petitioner] says he was intoxicated at the time should have some bearing. If one is so intoxicated at the time that they have no idea what they're

7

doing, I suppose it might be a valid motion, but there was no indication here today, nor was there at that time, that [the Petitioner] was under the influence to such an extent that he would not be able to exercise a rational decision about conferring or discussing the case, or giving a statement. . . .

And so it appears that Counsel reviewed the statement, and the, I assume, incriminating nature of it, reviewed the other evidence, as they had indicated, discussed it with what the [S]tate had against [the Petitioner], and decided that it would not be granted, the motion to suppress would more than likely not be granted.

It appears also that the statement was given voluntarily at that time by [the Petitioner]. Maybe he didn't understand all of the niceties and all the terminologies, but this [c]ourt would believe that he did voluntarily give that statement. I find little merit to the argument that he would not have given the statement had he known he was under arrest. He had to know he was under arrest. He was shackled, had been in the lock-up, and was now upstairs in the detective's area being questioned. Little doubt he was arrested.

So I don't find any merit to the grounds alleged in Post-conviction Ground Number 1, that there was ineffectiveness on the part of [C]ounsel to not file the motion.

Next, the post-conviction court found that Counsel had not failed to communicate with the Petitioner. The court found that Counsel did not tell the Petitioner that if the Petitioner pled to one count, Counsel would get the other nine counts dismissed. Further, the court stated:

It appears from the record that after some hope that it would be [an alternate sentence] as opposed to a prison sentence, that when that was determined it wasn't going to happen, and in light of all of the evidence that was stacking up against [the Petitioner], along with the possibility of the co-defendant testifying against him if [the case] went to trial, it appears there was [a] clear understanding to plead to one count, see what happened on the sentencing of that, and then work on the rest of them, and hopefully could work something out with the others, or have a trial if need be.

So it appears from the testimony here today that the allegation is without merit, that there was clear communication that the pleas were entered voluntarily and intelligently. When asked at the plea, [the Petitioner stated] "Yes, I'm doing it of my own freewill," it would appear that it was given voluntarily, that [the Petitioner] understood that, and he knew that, and he wasn't misled by misrepresentation or improper promises.

The post-conviction court found that Counsel explained mitigating and enhancement factors

8

to the Petitioner. The court found that Counsel explained that the Petitioner would have the opportunity to put on evidence of facts that could increase and decrease the severity of the length and manner of the Petitioner's sentence. The court noted that use of the terms "mitigating" and "enhancement" is not required. The post-conviction court found that the Petitioner agreed to the second plea arrangement and stated, "There's no proof to suggest that [the Petitioner] was intimidated or believed that he would get a 200-year sentence, or that he would get a life sentence. . . . The proof would indicate that [Counsel] did explain . . . what was used in the sentencing concept."

The post-conviction court found that there was no evidence that the State offered any lesser-included offenses, except the one count to which the Petitioner pled guilty. The court stated that "had they gone to trial, maybe the lesser-included[] [instructions] would have been given, but there's no indication here that, that even if [the Petitioner] didn't know about the lesser-includeds, that the guilty plea was not voluntarily given or entered because you didn't know about the lesser-includeds."

Based on it's findings, the post-conviction court concluded that the Petitioner was not denied effective assistance of counsel. The court stated:

> There's nothing in the record here to indicate that the advice given was below the range of competence. [Counsel] discussed the case with the [Petitioner], gave him the ranges of punishment, what the possibilities would be, how he would defend, and it would appear that [the Petitioner] made a voluntary decision to plead.

Further, the court found that the Petitioner suffered no prejudice as a result of Counsel's representation, stating:

> [The Petitioner] claims that he would not have pled had he known these things. I would agree that there's a good possibility he would not have pled had the statement been suppressed. But then there's no indication that he - - we don't know what the proof would be. There's little likelihood that the statement would have been suppressed based upon the fact that the statement was voluntarily given, signed by the [Petitioner], and after he had been Mirandized. And so, I do not find that the [C]ounsel for the Petitioner . . . was deficient, nor that the results would have been different had there been some different advice given.

## II. Analysis

The Petitioner now appeals, contending that: (1) he was denied the effective assistance of counsel; (2) his guilty pleas were not knowingly and voluntarily entered; and (3) there was not a sufficient factual basis to support the guilty pleas.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann.

9

§ 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S .W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

## A. Effective Assistance of Counsel

The Petitioner argues that he received ineffective assistance of counsel because Counsel failed to file a motion to suppress the Petitioner's statement and because Counsel failed to effectively communicate with the Petitioner regarding: the Petitioner's guilty pleas; consecutive and concurrent sentences; enhancing and mitigating factors; and lesser-included offenses. The State counters that Counsel's representation was not deficient, and the Petitioner suffered no prejudice as a result of Counsel's representation.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to a de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and

10

"should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *perm. app. denied* (Tenn. 2004). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515. In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

First, the Petitioner contends that Counsel was ineffective in failing to file a motion to suppress the Petitioner's statement. The Petitioner testified that Officer Andrews came to his home, placed him in the backseat of a patrol car, and took him to the criminal justice center. Once there, he was searched, placed in a holding cell, and placed in shackles. He was taken to be interviewed by Officer Andrews, and Officer Andrews informed the Petitioner of his constitutionally protected rights, which the Petitioner waived. Counsel testified that the Petitioner's statement set forth that he had been drinking beer, but he explained that the Petitioner's cognitive abilities were not adversely affected. Counsel reviewed the circumstances surrounding the statement and the content of the statement, and he discussed the merits of a motion to suppress the statement with the Petitioner's co-defendant's counsel. Based upon all of this information, Counsel determined that the Petitioner's statement would not be suppressed, and he decided not to file the motion to suppress this statement. The post-conviction court accredited Counsel's testimony, and it concluded that Counsel's performance was not deficient. The evidence in the record does not preponderate against the trial court's findings, and, based on these findings of fact, we conclude that the Petitioner has failed to prove that Counsel's performance fell below the standard of reasonably effective assistance. Furthermore, even if this Court found that Counsel's performance was deficient, the Petitioner has failed to prove prejudice. The trial court found that, had Counsel filed a motion to suppress the Petitioner's statement, the trial court would not have granted it. The Petitioner has failed to prove that but for Counsel's failure to file a motion to suppress, the Petitioner would not have pled guilty. This issue is without merit.

Next, the Petitioner asserts that Counsel was ineffective because Counsel did not effectively communicate with him regarding sentencing considerations or lesser-included offenses. The Petitioner testified that he met with Counsel several times. Counsel said that he met with the Petitioner between five to nine times, and he thought that his investigator also met with the Petitioner. Counsel testified that he and the Petitioner discussed the possible witnesses for the Petitioner's defense. He also said that he and the Petitioner reviewed the sentencing and range of punishment for each of the Petitioner's charges. Counsel testified that he explained to the Petitioner that, theoretically, the Petitioner could receive 200 years. He testified that he never told the Petitioner that the Petitioner would receive a "life sentence," but explained to the Petitioner that the

State's offer of fifty years could be, in effect, a life sentence.

Counsel said that the strategy upon which he and the Petitioner agreed was to plead guilty to one count of rape of a child, wait for the outcome of the sentencing hearing, and then decide how to approach the other nine counts of the Petitioner's indictment. He said that he told the Petitioner that he "hoped" that he could negotiate with the State to reduce the rape of a child charge to a lesser-included offense and to dismiss the nine remaining counts. Further, he said that he told the Petitioner that the Petitioner would receive between fifteen and twenty-five years, and the Petitioner would have the opportunity to present evidence for the trial court to consider at sentencing. Counsel testified that he explained enhancing and mitigating factors to the Petitioner in layman's terms. He also explained "concurrent" and "consecutive" sentences in layman's terms.

Counsel said that the State offered an additional plea agreement, whereby the Petitioner would plead guilty to a second child rape count and one count of attempted aggravated sexual battery. Counsel said that he discussed this with the Petitioner. He testified that he explained lesser-included offenses in layman's terms. He testified that he and the Petitioner reviewed the possible evidence against the Petitioner, and Counsel advised the Petitioner that the State's offer was a good one. Counsel testified that the Petitioner discussed this with his family and minister, and the Petitioner decided to enter a guilty plea. Further, Counsel testified that he explained the concepts of consecutive and concurrent sentences in layman's terms. Based on this evidence, and the facts found by the post-conviction court, we conclude that the Petitioner has failed to prove that Counsel's performance fell below the level of reasonably effective assistance. This issue is without merit.

## B. Knowing and Voluntary Plea

The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered because his Counsel was ineffective. The State counters that Counsel was not ineffective, and the Petitioner voluntarily and knowingly entered his guilty pleas. After thoroughly reviewing the record, we agree with the State.

Our Supreme Court set forth the following standards pertaining to the constitutional requirements for valid guilty pleas:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). Further, the Court has explained that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43), or if the defendant is "incompetent or otherwise not in control of [his] mental facilities" when the plea is entered. Id. at 904 (quoting Brown v. Perini, 718 F.2d 784, 788 (6th Cir. 1983)). In determining whether a plea is knowing and voluntary the court should examine the totality of the circumstances, including the following factors:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Powers v. State, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting Blankenship, 858 S.W.2d at 904).

In the case under submission, the record reflects that the Petitioner knowingly and voluntarily entered his guilty pleas. The Petitioner testified that he had a ninth grade education, and could write well but had some difficulty with reading comprehension. Counsel testified that he reviewed with the Petitioner all aspects of the Petitioner's case and all options available to the Petitioner. Counsel testified that he explained to the Petitioner that he had the right to demand a jury trial, the right to call and cross examine witnesses, and the privilege against self-incrimination.

Additionally, the Petitioner was fully advised of his rights by the trial court. The transcript of the guilty plea hearing reflects that the trial court fully questioned the Petitioner regarding his rights to a jury trial, his right to testify, and his rights to call and cross-examine witnesses. The transcript reflects that the Petitioner told the trial court that he fully understood his rights and that he was entering his plea voluntarily and free from any threats or coercion. Counsel questioned the Petitioner at both guilty plea hearings, and the Petitioner testified that Counsel and met with him, explained his options, and it was his decision to plead guilty. The Petitioner testified that he was satisfied with Counsel's representation. The Petitioner admitted that, when he left the courtroom on July 26, he understood that he would be serving a thirty-one year sentence. The post-conviction court found that the Petitioner entered his pleas knowingly and voluntarily. Based on the record before us, we find no error in the judgment of the post-conviction court.

### C. Factual Basis in Support of Plea

In the Petitioner's third argument, he contends that there was an insufficient factual basis presented to support his guilty plea. The Petitioner, however, failed to cite any authority in support of this contention. Under Rule 10(b) of the Rules of the Court of Criminal Appeals, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Accordingly, the Petitioner has waived his claim for relief as to this issue by failing to provide any legal authority in support of his

argument.  Additionally, we note that the Petitioner twice informed the trial court that he had no objection to Officer Andrews' account of the events and circumstances of Petitioner's crime.  This issue is without merit.

### III.  Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE